UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number:  13-20636-CIV-MORENO

QUIANA MOBLEY,

  Plaintiff,

vs.

CAPITOL SPECIALTY INSURANCE *et al.*,

  Defendants.

_____/

## ORDER GRANTING  IN PART AND DENYING IN PART DEFENDANT CAPITOL INS. CORP.'S MOTION FOR PROTECTIVE ORDER

THIS CAUSE came before the Court upon Defendant Capitol Ins. Corp.'s Motion for Protective Order, Motion to Strike, and Alternative Motion to Abate or Sever **(D.E. No. 38)**, filed on **June 14, 2013**.

THE COURT has considered the motion, response, and the pertinent portions of the record, and being otherwise fully advised in the premises and for the reasons discussed below, it is

**ADJUDGED** that the motion is GRANTED IN PART AND DENIED IN PART.

### I. Background

Plaintiff Quiana Mobley is a Florida Resident and the mother of the decedent, Larry Smith Junior, who was shot and killed at The Mint Lounge, a Gentleman's Club, in the early morning hours of April 7, 2010. Defendant Rich-Bon is a Florida Corporation that owns and operates the Mint Lounge. Defendant Capitol  Specialty Insurance Corporation is a Wisconsin Corporation that sells insurance policies, including in Florida. Defendant Essential Entertainment Insurance Agency, LLC is an Illinois Limited Liability Company that operates as an insurance agency. Defendant Axiom

Insurance Managers Agency, LLC has its Principal Place of business in Illinois and provides insurance underwriting and administrative services.

Plaintiff originally filed suit in State Court against Rich-Bon, the owners of The Mint Lounge. According to Plaintiff, Rich-Bon had negotiated for an insurance policy with Defendant Capitol Specialty Ins. Co. ("Capitol") with a $2 million policy limit. After negotiations, Capitol allegedly forwarded to Rich-Bon an insurance binder containing assault and battery coverage on October 14, 2009. Plaintiff claims this is the last contact regarding the policy Capitol and Rich-Bon had until after the death of Plaintiff's son. On April 20, 2010, Rich-Bon received a copy of the insurance policy that contained a firearms exclusion. Capitol refused to defend Rich-Bon in Plaintiff's action. Thereafter, on August 8, 2012, Plaintiff and Rich-Bon entered into a *Coblentz* Agreement in the amount of $5 million. Pursuant to the agreement, Plaintiff became the assignee of Rich-Bon's claims against the other defendants.

After the agreement, Plaintiff amended her claims and included Rich-Bon, Capitol, Axiom Ins. Managers Agency ("Axiom"), and Essential Entertainment Ins. Agency ("Essential") as Defendants. This case was removed to Federal Court on February 21, 2013. Plaintiff's Second Amended Complaint included four counts: (1) Declaratory Relief against Capitol; (2) Breach of Contract against Capitol; (3) Negligence against Essential; and (4) Negligence against Axiom.

On June 14, 2013, Defendant Capitol filed a Motion for Protective Order, Motion to Strike and Alternative Motion to Abate or Sever. The Motion seeks two specific instances of relief. First, Capitol asks the Court to strike from the Second Amended Complaint Plaintiff's prayer that the Court declare "that the settlement agreements reached between QUIANA MOBLEY and RICH-BON were reasonable under the circumstances, were made in good faith, and to declare that CAPITOL is liable

to QUIANA MOBLEY in the amount of $5,000,000, plus interest at the legal rate." Second, Defendant Capitol asks this Court for a Protective Order protecting it from having to respond to discovery related to statutory bad faith until such time as a determination of its liability under the insurance policy is established. Specifically, Defendant wants to be relieved of requests for:

1. All documents and all claims files relating in any way to the insured, Rich Bon Corporation.

2. All agency and profit sharing agreements which existed at any time between Capitol and Axiom including, but not limited to, the Program Administrator Profit Sharing Plan Effective January 1, 2009.

3. All documents including, but not limited to, correspondence between Capitol and Axiom, including its agents and employs, relating to the January 1, 2009 Profit Sharing Agreement.

4. All documents, including, but not limited to, correspondence between Capitol and Essential, including its agents and employs, relating to the January 1, 2009 Profit Sharing Agreement.

Finally, Defendant seeks that the Court, in its protective order, prohibit Plaintiff from seeking depositions on the issue of bad faith.

### III. Legal Analysis

*A. Defendant's Motion to Strike*

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, motions to strike are drastic remedies, and are disfavored by the courts. *Montoya*

*v. L.C. 1 Trucking Corp.*, 2013 WL 588322, *1 (S.D. Fla. February 13, 2013) (Seltzer, J.). "The purpose of a Motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. It is not intended to procure the dismissal of all or part of a complaint." *Schmidt v. Life Ins. Co. of North Am.*, 289 F.R.D. 357 (M.D. Fla. 2012). Accordingly, "motions to strike are usually denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Montoya,*2013 WL 588322, *1 (internal quotations omitted).

In this case, Plaintiff is seeking to enforce a *Coblentz* agreement. A *Coblentz* agreement is a negotiated final consent judgment entered against an insured which was not defended by the insurer. *Wrangen v. Penn. Lumbermans Mut. Ins. Co.*, 593 F.Supp.2d. 1273, 1278 (S. D. Fla. 2008). Generally, under a *Coblentz* Agreement, an insured defendant "enter[s] into a settlement that assigns to the plaintiff the insured's rights against the insurer in exchange for a release from personal liability." *See Perera v. U.S,. Fidelity and Guar. Co.*, 35 So.3d 893, 903 (Fla. 2010). A *Coblentz* agreement is enforceable against the insurer where "damages are covered by the policy; (2) the insurer wrongfully refused to defend; and (3) the settlement is reasonable and made in good faith." *Id.* Additionally, the party seeking to enforce the settlement agreement against the insurer has the burden of initially producing evidence sufficient to make a prima facie showing of that the settlement was reasonable and made in good faith. *Shook v. Allstate Ins. Co.*, 498 So.2d 498, 500 (Fla. Dist. Ct. App. 1986).

Under Florida law, "[a]bsent a showing of bad faith, a judgment cannot be entered against an insurer in excess of its policy limits." *State Farm Mut. Auto. Ins. Co. v. Horkheimer*, 814 So.2d 1069, 1072 (Fla. Dist. Ct. App. 2002). "A claim for bad faith ... is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith

-4-

and fair dealing towards its insured to pay." *Vest v. Travelers Ins. Co.* 753 So.2d 1270, 1275 (Fla. 2000). *Coblentz* Agreements are enforceable against an insurer in excess of the policy limits where the insurer "wrongfully refuses to defend and acts in bad faith." *Perera v. U.S,. Fidelity and Guar. Co.*, 35 So.3d 893, 900 (Fla. 2010); *see also Shook,* 498 So.2d at 498-499. "Implicit in these decisions is a recognition that the insured would not have entered into the consent judgment but for the bad faith of the insurer and that the insured would otherwise have been exposed to personal liability as a result of the insured being left "to its own devices." *Id.* However, "a denial of payment does not mean an insurer is guilty of bad faith as a matter of law." *Vest v. Travelers Ins. Co.* 753 So.2d at 1275.

In Florida, "bringing a cause of action in court for a violation of § 624.155(1)(b)(1) [bad faith] is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract." *State Farm Mut. Auto. Ins. Co.v. Horkheimer*, 814 So.2d at 1073. "Where causes of action for both the underlying damages and bad faith are brought in the same action, the appropriate step is to abate the bad faith action until coverage and damages have been determined." *State Farm Mut. Auto. Ins. Co. v. Tranchese*, 49 So.3d 809, 810 (Fla. Dist. Ct. App. 2010).

The case at bar is somewhat muddled because Plaintiff has not directly asked for statutory bad faith damages under Fla. Stat. Ann. § 624.155(1)(b)(1); rather, Plaintiff has asked for a declaratory judgment that Defendant Capitol is liable to Plaintiff in the amount of $5,000,000. This amounts to the same thing, as "[a]bsent a showing of bad faith, a judgment cannot be entered against an insurer in excess of its policy limits." *State Farm Mut. Auto. Ins. Co. v. Horkheimer*, 814 So.2d at 1072.

Indeed, in its Response Brief, Plaintiff argues that what Defendant calls "bad faith" actually relates to the second element of a *Coblentz* determination: the insurer's wrongful refusal to defend.

Plaintiff's Response Brief at 5. Plaintiff's argument conflates the "wrongful refusal to defend" element of a *Coblentz* agreement claim with a statutory bad faith claim. While the two factors are certainly related and the line separating them can be imprecise, Plaintiff's argument contravenes the great weight of Florida law. *See e.g. Vest v. Travelers Ins. Co.* 753 So.2d at 1275; *Landmark American Ins. Co. v. Studio Imports, Ltd., Inc.*, 76 So.3d 963, 963 (Fla. Dist. Ct. App. 2011). Thus, until a determination of coverage is made in this case, any claim for bad faith, including a claim for enforcement of a claim above the policy limits, is premature. Because striking a pleading is a "drastic" remedy, this Court finds that the claim for money in excess of policy limits should be abated until a determination of coverage under the policy is made. *See Tranchese*, 49 So.3d at 809.

In light of the precedent discussed above, the relief sought in the remainder of Defendant Capitol's Motion to strike is unavailable to Defendant Capitol. Under Florida law, for a *Coblentz* Agreement to be enforced against an insurer above its policy limits, the proceedings must have two distinct phases: (1) a determination that the *Coblentz* Agreement is enforceable, and (2) a determination that the Defendant insurer acted in bad faith. As discussed, in order for a Court to determine a *Coblentz* Agreement is enforceable, it must first determine that "damages are covered by the policy; (2) the insurer wrongfully refused to defend; and (3) the settlement is reasonable and made in good faith." *Perera*, 35 So.3d at 903. Thus, obtaining a Declaration by this Court that "that the settlement agreements reached between QUIANA MOBLEY and RICH-BON were reasonable under the circumstances, [and] were made in good faith" is the entire purpose of a suit to enforce a *Coblentz* Agreement. Defendant Capitol is attempting to split what should be a two-part process into three or more parts; in essence, Defendant wants a separate trial on each element, and then another trial on bad faith damages if it fails in its first three attempts. This it cannot be allowed to do. Indeed, the underlying coverage issue that Plaintiff is so adamant about litigating first is an essential element

to Plaintiff's suit to enforce the *Coblentz* Agreement. Capitol has cited no cases, and this Court has found none, where a determination of an insured's coverage under an insurer's policy has been separated from a suit for enforcement of a *Coblentz* Agreement. Plaintiff is entitled to seek that this Court declare that the agreement it reached with Rich-Bon is reasonable, made in good faith, and that this Court declare Capitol liable to the Plaintiff. As such, the Court DENIES the remainder of Capitol's Motion to Strike.

### B. Defendant's Motion for Protective Order

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1)."Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evidence 401. "Courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules." *Buckley Towers Condo. Inc. V. QBE Ins. Corp.*, 2008 WL 2645680 at *1 (S.D. Fla. June 26, 2008) (Torres, J.).

"A court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *See also Wrangen v. Penn. Lumberman's Mut. Ins. Co.*, 593 F.Supp.2d 1273, 1278 (S. D. Fla. 2008). "Good cause has been defined as a sound basis or legitimate need to take judicial action." *Wrangen v. Penn. Lumberman's Mut. Ins. Co.*, 593 F.Supp.2d. at 1278 (*quoting In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987). "The party requesting a protective order must make

a specific demonstration of facts in support of the request." *Id.*

**1. Defendant Capitol has not shown that it is entitled to a Protective Order Regarding Its Claim File.**

As discussed in part A above, a statutory bad faith claim is premature until the Court determines the insurer's liability under the insurance contract. *State Farm Mut. Auto. Ins. Co. v. Horkheimer*, 814 So.2d at 1073. Defendant cited a host of state law cases to support its proposition that its claim file is not discoverable. However, "under federal law, there is no blanket protection of an insurance company's claim file."[1] *The Atrium on the Ocean II Condo. Ass'n v. QBE Ins. Corp.*, 2007 WL 2972937 at *2 (S.D. Fla. 2007) (Graham, J.).

"Evidence geared solely to support a bad faith claim is premature and not discoverable, as arguments related to bad faith liability under Fla. Stat. 624.155 are premature until the coverage issue is resolved." *Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 2008 WL 2645680 at * 2. However, if evidence is relevant to the bad faith claim, and is *also* relevant to the underlying coverage claim, then that evidence is discoverable. *Id.; See Milinazzo v. State Farm Mut. Ins. Co.*, 247 F.R.D. 691, 696 (S.D. Fla. 2007) (Torres, J.). In *Milinazzo*, the Plaintiff was suing to enforce a third party agreement similar to a *Coblentz* agreement. *See Milinazzo v. State Farm Mut. Ins. Co.* 247 F.R.D. at 692. This District, relying on another recent case, found that "documents related to the

---

[1]Under Florida Law, if a cause of action for statutory bad faith is premature, "a party is not entitled to discovery of an insurer's claim file or documents relating to the insurer's business policies or practices regarding the handling of claims in an action for insurance benefits combined with a bad faith action until the insurer's obligation to provide coverage has been established." *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So.2d 633, 637 (Fla. Dist. Ct. App. 2008). However, this Florida court rule is not binding on Federal Courts. *See The Atrium on the Ocean II Condo. Ass'n v. QBE Ins. Corp.*, 2007 WL 2972937 at *2 (S.D. Fla. 2007) (Graham, J.) (*quoting St. Joe Co. V. Liberty Ins. Co.*, 2006 WL 3391208 at *3 (M.D. Fla. 2006) ("Florida state court cases regarding of discoverability of claims files are not binding on federal courts."))

'investigation, processing, analysis' and ultimate denial of Plaintiff's claim are relevant to the extent they relate to Plaintiff's breach of contract claim." *Id.* at 696 (*citing Atrium on the Ocean II Condo. Ass'n v. QBE Ins. Corp.*, 2007 WL 2972937 at *2 (S.D. Fla. 2007) (Graham, J.)) ( (hereinafter "*The Atrium*").[2] The Court noted that "as a practical matter, however, Defendant will have to justify its denial of coverage to mount of a breach of contract defense." *Id.* at *2, n.4.

    In the instant case, Defendant has sought a Protective Order on Plaintiff's request for "All

---

    [2]*But see Tower 1515 Condo. Apartments Assoc. Inc. v. QBE Ins. Corp.*, 2006 WL 6900965 (S.D. Fla. 2006) (Hurley J.). In *Tower 1515,* Plaintiff filed a breach of contract and declaratory action against an insurer and sought production of what the district Court characterized as "essentially...the entire claim file." *Id.* At *1. The Court overruled the Magistrate Judge's Order compelling the production of the files, The District Court addressed the procedural default of Defendant in failing to timely file a response to a motion to compel, and it declined to "hold that the defendant and non-parties involved in that matter had forfeited objections based on privilege and relevancy by default or by a blanket failure to carry their burden of proof." *Id.* at *1-2. The Court went further, however, and concluded "that the claim file discovery in question is premature, and that the defendant's relevancy objections to it are properly sustained as a matter of law. *Id.* at *1. The Court held that "unless and until the underlying coverage claim is determined, and as statutory bad faith action lodged under 624.155, Florida Statutes, the insurer's claim file is irrelevant and beyond the scope of permissible discovery. *Id.* at *2.
    However, since the decision in *Tower 1515*, Courts in this District have distinguished *Tower 1515* and declined to follow it. *See Milinazzo v. State Farm Mut. Ins. Co.*, 247 F.R.D. at 696; *The Atrium on the Ocean II Condo. Ass'n v. QBE Ins. Corp.*, 2007 WL 2972937 at *2; *Regency of Palm Beach, Inc. V. QBE Ins. Corp.*, 259 F.R.D. 645, 651 (S.D. Fla. 2009) (Johnson, J.). Indeed, Defendant did not even cite *Tower 1515* in its brief on this motion. As the Court in *Milinazzo* explained, "The *Atrium* court acknowledged, but declined to follow *Tower 1515*, opining that the *Tower 1515* decision mainly addressed the issue of defendant's waiver of objections, and was not an analysis of claim file discovery. The *Atrium* Court further distinguished *Tower 1515* by pointing out that the discovery request at issue was overly broad, whereas in *Atrium*, the plaintiff made a more limited discovery request." *Milinazzo v. State Farm Mut. Ins. Co.*, 247 F.R.D. at 696, n.4. This Court likewise declines to follow *Tower 1515*. For the purposes of the instant case, *Tower 1515* is not binding for the reasons discussed in *Milinazzo* regarding the relevance of a claim file to the extent it relevant to the breach of contract claim, as well as because of the narrow reading that subsequent courts have given *Tower 1515*. Further, *Tower 1515* is distinguishable because of the specific charges that Defendant Capitol failed to timely forward the final policy to Rich-Bon and sent a policy with a firearms exclusion only after the incident in question and after having sent a binder which contained no firearms exclusion. *See generally Regency of Palm Beach, Inc. V. QBE Ins. Corp.*, 259 F.R.D. at 651, n.9.

documents and all claims files relating in any way to the insured, Rich-Bon Corporation." This claim file falls under the line of reasoning espoused by *Milinazzo*, *The Atrium*, and *The Regency of Palm Beach*. As in *Milinazzo*, these claim files are "relevant to the extent they relate to Plaintiff's breach of contract claim." *Milinazzo v. State Farm Mut. Ins. Co.*, 247 F.R.D. at 696. Defendant Capitol is correct in its argument that, to the extent that items in the claim file relate *only* to the bad faith/declaratory judgment claim, they are premature and not yet discoverable. Nevertheless, Defendant made no effort to separate any contended documents that are relevant for both the breach of contract claim and the bad faith/declaratory judgment claim from those that are only relevant to the bad faith/declaratory judgment claim. Thus, Defendant did not make "specific demonstration of facts in support of the request" for protective order. Hence, Defendant has not shown the Court that it has "good cause"so as to be entitled to a protective order. *See Wrangen v. Penn. Lumbermans Mut. Ins. Co.*, 593 F.Supp.2d. at 1278. Thus, Defendant's Motion for a Protective Order is DENIED to the extent that any discovery requests are relevant to the extent that they do not relate solely to a claim that Defendant Capitol acted in bad faith in refusing to defend or cover Rich-Bon.

### 2. Plaintiff is Not Entitled to Production of Documents Related to Defendant Capitol's Contractual Profit-Sharing Agreements with Co-Defendants.

When separating coverage issues from those of insurer bad faith, "financial or contractual documents between an insurer and its insurance adjusting or managing agency, do not fall under the specific processing and analysis category related to the insured's claim that is generally discoverable." *Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 2008 WL 2645680 at * 3. In *Buckley*, the Plaintiff sought discovery concerning the business arrangements between its primary insurer and affiliated companies, including its claims adjuster. *Id.* Plaintiff argued that the documents were relevant for its breach of contract claim against its insurer, as well as for possible impeachment.

*Id.* at *4. The court did not devote much discussion to the breach of contract claim, but discussed the impeachment claim at length. *Id.* The court noted that the financial intertwining was "self-evident" and warned that "the Court also has to guard against an unnecessary and distracting blurring of the lines between pure coverage cases and bad faith disputes." *Id.* at *5. The Court ultimately concluded that "[t]he litigation cost and time required to address that broadened discovery would undermine the essential purpose of this case-adjudicating whether coverage applies at all and the amount that the insured is due under the policy." *Id.*

In the case at bar, the same logic applies. Plaintiff has requested:

2. All agency and profit sharing agreements which existed at any time between Capitol and Axiom including, but not limited to, the Program Administrator Profit Sharing Plan Effective January 1, 2009.
...
7. All documents including, but not limited to, correspondence between Capitol and Axiom, including its agents and employs, relating to the January 1, 2009 Profit Sharing Agreement.

8. All documents, including, but not limited to, correspondence between Capitol and Essential, including its agents and employs, relating to the January 1, 2009 Profit Sharing Agreement.

Plaintiff's response to Defendant Capitol's Motion for Protective Order regarding these specific documents is cursory at best. Plaintiff's argument, in its entirety, as to why a Protective Order should not be issued is that Capitol's "relationship, contractual or otherwise, with Axiom and Essential, are relevant to the issues raised in this action for declaratory judgment and breach of

contract." As discussed above, what Plaintiff calls the declaratory judgment is in substance a claim for statutory bad faith. *See State Farm Mut. Auto. Ins. Co. v. Horkheimer*, 814 So.2d at 1072. Thus, the "unnecessary and distracting blurring of the lines between pure coverage cases and bad faith disputes" that concerned the Court *Buckley Towers* is present in the instant case. Until coverage is determined, this Court will refrain from increasing the costs that would come with a broadened discovery. In light of the *Buckley Towers* reasoning, it seems clear that Defendant Capitol will be subject to undue burden and expense, and has thus satisfied the good cause" standard required for a protective order regarding its contractual arrangements with co-Defendants Axiom and Essential. *See also Royal Bahamian Assoc., Inc. v. QBE Ins. Corp.*, 268 F.R.D. 695, 699 (S.D. Fla. 2010) (Goodman, J. *on referral* from Moreno, J.).

The primary difference separating this case from *Buckley Towers* and *Royal Bahamian* are that the affiliated companies, Axiom and Essential, are also Defendants in this case. Indeed, Plaintiff has brought a claim for negligence against each party. While this makes the comparison to *Buckley Towers* and *Royal Bahamian* imperfect, it does not change the analysis. While Plaintiff has brought a negligence claim against them, it has not argued that the requested documents are relevant for its negligence claim. Thus, the analysis above is not undermined, and Defendant Capitol's Motion is be GRANTED.

### 3. Plaintiff's Work Product Arguments are Not Applicable, as Defendant Raised no Work Product Defenses.

Finally, Plaintiff devotes significant energy arguing why the work product doctrine does not protect the requested items from discovery. While Plaintiff may be correct, Defendant did not raise a work product defense. It is the burden of the party raising a work product defense to show it is entitled to it. *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645, 649 (S.D. Fla. 2009)

(Johnson, J.).   Defendant did not raise a work product defense. Thus, it can be considered waived. *Id.*

## IV. Conclusion

Defendant's Motion for Protective Order [D.E. No. 38] is GRANTED IN PART and DENIED IN PART. To the extent that it seeks damages beyond the policy limits, Plaintiff's claim for Declarative Judgment should be ABATED until a determination of coverage is made. Defendant's Motion to strike is DENIED. Defendant's Motion regarding the limitation of information sought in Depositions or discovery is GRANTED to the extent that any question or document is only relevant to the issue of bad faith and DENIED to the extent that the question or document is relevant to Plaintiff's other claims. Defendant's Motion for Protective Order regarding discovery of contractual documents is GRANTED.

As stated in open Court, Plaintiff shall be allowed to take depositions from individuals employed by Defendant Capitol. As such, Discovery is reopened and shall run through **August 19, 2013**. Because Discovery is reopened, this Court, *sua sponte*, CONTINUES the trial date in this case to the two-week period beginning **December 16, 2013**.

Finally, For the reasons stated in Open Court, Plaintiff's Motion to Compel (**D.E. No. 52**) filed on **July 16, 2013** is DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this / / day of July, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record